21-5801 Greg Adkisson v. Jacobs Engineering Group Inc. Oral argument is not to exceed 15 minutes per side. Ms. Evangelos for the appellant. Good morning. May it please the court. D.N.A. Evangelos on behalf of Jacobs Engineering. I'd like to reserve five minutes for rebuttal. The Supreme Court's decisions in Campbell, Ewald, and Thacker make clear that Jacobs is entitled to immunity. This court should enter judgment in Jacobs' favor or in the alternative and, at a minimum, vacate the Phase I verdict and order a new trial. In 2009, TVA was designated by EPA as the lead federal agency tasked with overseeing a massive cleanup project at Kingston. TVA hired Jacobs, a leading engineering company, to assist with managing the cleanup effort as its on-site agent. In the over 300-page safety plan and multiple appendices with exacting detail, TVA set forth the specific requirements for the remediation. Jacobs followed those instructions. As plaintiffs have made clear in this ongoing litigation, they disagree with many of TVA's directives, including decisions like permissible exposure thresholds. And the whole purpose of this suit is to ask the jury to second-guess TVA's policy choices, which were made in performing its quintessential governmental function. They were executed by Jacobs and- Counselor, can I ask you a question? Just to clear some of the brush away, we're all on the same page that Jacobs Engineering stands in the shoes of TVA when it comes to immunity, is that fair? Yes, Your Honor. And then, so then there's a sue and be sued clause, right? So we're all on the same page there. Yes. And then we're all on the same page that there's an implied limitation to the sue and be sued clause for grave interference and all of that, right? So why would a tort lawsuit count as a grave interference? I mean, it seems like it wipes out the sue and be sued clause. Instead of a narrow implied limit, if you say it's grave interference when there's a state tort lawsuit, I mean, that seems like the whole point of a sue and be sued clause. So I'm trying to figure out where this- Does it wipe out all state tort suits, or is there something special about this one? Your Honor, it doesn't. Thacker is the key case there. So the Supreme Court's decision in Thacker explained when TVA would be immune, and we have to start with that. It's important to keep in mind that not all tort suits are created equal. Is it a volume, like the amount of damages, number of lawsuits? What is it? No, Your Honor. It's the character of the lawsuit. It's the fact that this lawsuit is attacking TVA's choices, its policy judgment, the standard of care that it was tasked by EPA to- That's every- I don't know where that stops. I mean, maybe- Your Honor- How about this? I don't think there's a Supreme Court case that deals with the question we have. Is there a court of appeals case that embraces your position? Well, Your Honor, I think the Burr case does discuss what grave interference is from the Supreme Court, but the Boeing case- Wait, but Burr is not a state tort suit, right? No, Your Honor, but- Boeing does not have a sue-and-be-sued clause. Well, Your Honor, but Thacker talks about if it gravely interferes with the governmental function, then the suit would not be allowed to proceed. That would be the core immunity. So let me just give you an example of what would not be covered. So a state tort suit for negligent driving of a truck. Let's say TVA had an employee who negligently drove a truck. That's a run-of-the-mill tort suit. Doesn't gravely interfere with policy choices, but when TVA is articulating under CERCLA, it's been given this authority to remediate this- to clean up this spill, and it has articulated a 300-page safety plan, which goes into excruciating detail on every aspect of permissible- of whatever is permissible of dealing with the hazardous waste here. It's dealing with something in a governmental capacity, and that's where state tort law runs right up against that. So if this isn't a governmental function, I think we all agree nothing is. So that is a given, but we have to look at what the suit is, and this suit is challenging the exercise of that function. So that's the Thacker inquiry. And then we ask whether Jacobs gets to stand in the shoes of TVA. So TVA's immunity is established under Thacker. We know that state tort law can regulate. We know that from the Cipollone case from the Supreme Court. It's been said time and time again. So that is black-letter law that state- Is Cipollone a plurality opinion? I don't remember that. So I remember thinking that was kind of avant-garde when they did that. Well, Your Honor, that's just one of many cases. Then we've cited them in our briefs where it's a situation where state tort law is imposing a different standard of care than the federal agency has. And that's the same as the Boeing situation. Again, different context, Your Honor, but I would point you to that decision because it's very important there. There was a cleanup remediation of a nuclear waste, and there the Department of Energy had certain guidelines and Boeing followed them, and the state could not impose a different set of guidelines, a different set of standards. So I would like to turn to the Campbell-Ewald question. Can I ask a question first, Judge Rogers? I'm trying to get oriented as to what issues there are. You have to win both on the Thacker issue and the Campbell-Ewald issue in order to win on this appeal. Is that correct? That's right, Your Honor. There are two parts to the immunity. So if you lose on the Thacker issue, if, for instance, we think it doesn't fit under Barr, then that's the end of the appeal. Is that correct? Well, Your Honor, it is if TVA is not immune. And it's the same true about the Campbell-Ewald issue. If you win on the Thacker-Burr issue, but you lose on the Campbell-Ewald issue, and the way that you lose, let's hypothesize, is that we reject this contention that the standard is whether there was an explicit requirement. If we were to disagree with you on that, then you would lose this appeal. Is that correct? Well, no, Your Honor. There would also be the component of federal law. But it is true. Well, if we disagree with you that one of those two is not required, in particular, the explicit instructions one is not required, then you would lose then, right? Well, I think that's probably true, Your Honor. Okay. Well, I'm just trying to say, because you have this argument at the end, which is an alternative argument. I'm trying to see exactly what it's alternative to. So I will. I mean, if you lose on that issue, you lose unless you can explain to me otherwise, in which case I have another question. But what's the answer to that one? Thank you, Your Honor. So we get a new trial here because the district court standard is completely divorced from Campbell-Ewald, and it was baked into the district court. But if we disagree with you on that sentence that you just uttered, we say, oh, no. I'm not saying we will. I'm just asking if we do, then there's no additional issue to go to. Your Honor, if I understand your question correctly, we have to satisfy both steps of the inquiry, Campbell-Ewald and Thacker. And I would like to discuss what the test is under Campbell-Ewald, because I believe that the district. Well, I know you would, but can you answer my question? Can we put this alternative argument aside then and just do the Campbell-Ewald issue? Yes. And knowing that your case wins or loses on that. Yes. Okay. Yes. Thank you. So under Campbell-Ewald, the key issue is whether the contractor followed the government's explicit instructions and federal law. The district court's decision is completely divorced from that standard. It asks whether something was contrary to the will of the government. And your Honor, implicit instructions, what the district court believed would be enough. Implicit instructions defeats the purpose of years Lee immunity, because one could argue that any negligence would always be contrary to the will of the government. That's why courts, every circuit to have decided to look at this after Campbell-Ewald has said the instructions have to be explicit. And that makes a lot of sense. Can I ask a question about that? Cause that's puzzling to me as a matter of logic. If you say this is enough to create immunity, it's not the same as that it's required. There's a difference between what's required and what's enough. Do you have any cases which say that it's required? And that would be a case where they said you didn't have it. So you lack the immunity. Your Honor, I'll point to Campbell-Ewald where the other Campbell-Ewald is clearly not such a case. It says federal directives. So we have to look at the language there. It says that the contractor has to comply with federal directives and directives. If they comply with it. And in Cunningham, your Honor, that title there. Yes. Go ahead. I'll rephrase my question. Go ahead. I will point the court to Cunningham from the fourth circuit, which I think is again, applying Campbell-Ewald and there it talks about the fact that the contractor followed the explicit instructions and, and actually there was a violation of federal law, but it followed the explicit instructions. And that was enough. I apologize for not making my question clear. You rely on this sentence from Campbell-Ewald. When a contractor violates both the federal law and the government's explicit instructions, as here alleged no derivative immunity shields, the contractor. That could be true, but that's just saying there's no derivative immunity in that case. It doesn't say that if you have something slightly less than that, you do have derivative immunity. Well, your Honor, that's like, that's what you have any case, which says there is derivative immunity. When there was no explicit instruction, as opposed to there isn't derivative immunity when there is explicit instruction, that one's like converse of the other. And we all know that the converse is, can be not implied by the statement, right? I understand your Honor's question. I think the key part of Campbell-Ewald is looking at a contract. It says here, quote contractors performance, the critical inquiry under years, Lee is whether quote, the contractor's performance was in compliance with all federal directions. So we have to look at whether there were federal directions. And I would submit that federal directions are not implicit. If they were, then we would be stuck with post hoc litigation, talking about what mid-level managers might've thought in the district courts, contrary to the will standard. But still you'll agree that all of your cases, which you say this case says, this is the standard in that case. And Campbell-Ewald says, that's the standard. They're all saying that the standard is met. They're not saying something less than that would not need it. Is that true? Or do you have any that go the other way? That's true. That's true. Your Honor. We don't have that situation here though, here we did have explicit instructions. We had very clear instructions in a 300 page safety plan and Jacobs followed all of those and plaintiff's theory. I just wonder if it's something, if, if, if we say in a case, well, they did X, Y, and Z. And that was enough. That requires us to say that in a future case X and Y, but not C is not enough. Well, your Honor. That doesn't logically follow. Is that correct? Well, here, your Honor, this is not, that's not the situation here. So I just want to make very clear the plaintiff's theory and what the jury was instructed actually, actually contradicts the explicit instructions in the safety plan. So let me give just a couple examples. I know my time is running out. Why don't you use one and maybe the respirator one would be the best. Go ahead. Sure. So they're second guessing TVA's judgments in federal law. If we look at appendix C of the safety plan, it had very specific requirements for the voluntary use of dust masks. And there it said that a mask would only be permitted if it won't create a hazard. And that's the same as the federal regulation that covers this. A worker has to be medically able to use it. So anyone simply asking for one or getting a doctor's prescription for one doesn't work because it can be dangerous actually, if they don't have the right pulmonary function. So a doctor, a medical clearance process has to be in place. That's exactly what happened here. And so Jacobs actually would have violated federal directions here if it had provided a respirator to anyone who had asked for one. So this is, again, the plaintiffs are running straight up against the safety plan. And the same is true as for the random monitoring theory that contradicts TVA's instructions, which were don't randomly monitor. And for worker complaints, safety plan, section 15, specifies in detail what Jacobs had to report. And they're coming up with something totally different. So again, they want Jacobs in line. Ms. Evangelos, we've gone to, I think, three, but more importantly, I want to make sure if Judge Rogers has a follow-up right now, you'll get your five minutes of rebuttal. Not at all. Okay. Judge Gilman, do you have any questions at this point? Not at this point. Okay. Ms. Evangelos, you reserve five minutes. That's quite a bit. So I'm not feeling uncomfortable letting Mr. Sylvie go. All right. Thank you. May it please the court, Mark Sylvie in Knoxville, Tennessee. One thing I want to point out at the outset is Jacobs continually refers to the site-wide safety and health plan as TVA's instructions, when in fact Jacobs was the one that created this document and continually revised this document. It was Jacobs that created the standards. It was Jacobs that created all the ins and outs and the details. Could you be specific, Mr. Sylvie, to the respirator point? On the respirator point, are you saying all of the directives are coming solely from Jacobs? Is that what you're saying? Because I thought she was saying this did grow out of federal regulation. The requirements of CERCLA and the specifics are certainly incorporated into the SWSHP. But as far as how the SWSHP, which was much broader than just a recapitulation of CFR standards. Try to be specific. You're not answering the question. What part of the respirator debate grows out of something Jacobs innovated on its own, as opposed to something that grows out of federal law? Jacobs had some specific instructions about when and how an employee could seek to use a respirator, whether a physician note was required. In one case that we've referred to in our brief, and that the judge also discussed at the district court level, an employee testified at trial that he had a doctor's note, requested a respirator that would have been in conformance with the SWSHP. And nonetheless, Jacobs refused to allow him to use one. So that's just a specific example relating to the respirators. But as Judge Varlin pointed out in his order on this motion, the record contains sufficient evidence to send the issue of compliance with the SWSHP to the jury. The jury returned a verdict that said, no, they didn't follow the directives from the government. And because of that, it failed, Jacobs fails to be entitled to derivative immunity. These questions don't go to the merits of this case, which isn't what this motion that Jacobs filed its most recent motion, even places properly before the court. As Judge Varlin noted, the only thing that Jacobs motion was founded on was the decision in Thacker. But if you'll notice, as Judge Rogers was pointing out, the analysis of derivative immunity here is a two part consideration. And frankly, it doesn't matter. It's the chicken or egg thing. It doesn't matter whether you do the Thacker part first or the Campbell Ewald Yearsley part first. I can ask you about the Thacker one. I mean, I get the point that you can't say it's a grave interference every time you're vulnerable to state tort suits. But this seems to be fairly extraordinary. Chip Malone is an example of fairly extraordinary liability. Why wouldn't we say this fits the grave interference? Because simply there's two reasons for that. One is factual, one is legal. The legal basis is, is that simply filing a lawsuit in and of itself, if simply filing a lawsuit in and of itself constitutes a grave interference, then the sue and be sued portion means nothing. Okay, you're not answering my question. I mean, I acknowledge the very point you're making in the initial part of the argument. I'm dealing with the possibility that this very serious damages, like break the back of the company damages. And why isn't that making a difference in kind as opposed to degree? Because any court that looks at this would not consider that, that type of damage, that type of relief to be a grave interference. But there's a presupposition, Judge Sutton, that you're making that we can't gloss over. To even get to an analysis of grave interference, you have to find, and again, we're looking now at TDA's immunity under Thacker, that you have to find necessarily that this activity was not commercial. And we aren't willing to concede that. You only do the grave interference inquiry. If you determine that TVA's activity was. Wasn't TVA designated the agency in charge of the circle cleanup? I mean, that's. Oh, it certainly was. But that, as we've discussed in our brief, simply using that nomenclature, doesn't change the basis of the activity. We cited to the Duke power case, what TVA was doing was cleaning up its spill, which originated with the generation of electric power for consumers. That's exactly the kind of commercial activity that Judge Kagan specifically described in Thacker. The production of power may be just a commercial activity, but the actually being in charge of the cleanup, isn't that a governmental function? No, under Thacker, it wouldn't be. And the reason that we know that is because Thacker remanded the case for determination of whether the activity in Thacker replacing a downed power line was a governmental activity. And as we pointed out to get in our brief on remand, the district court said, no, that's something that any power company would do. Thacker didn't involve CERCLA designating TVA to be in the lead and charge of cleanup. There wasn't any cleanup in Thacker. Sure. Well, yes and no. They cleaned up a downed power line. And here they cleaned up a huge unprecedented coal ash spill. I thought the point was they're the lead agency. They're not the lead entity. They're the lead agency. Agency's government. That's what I think Judge Gilman is asking. I know. And we certainly understand that point. But again, our position is that because the activity that this case originates from and the nature of the claims in this case relate to TVA's generation of electricity, the claims in this case concern the safety and lack thereof for the workers in the cleanup. Those kinds of claims are related to what resulted from the generation of electricity. It's not where the claim, for example, would be that the remediation didn't properly protect the environment or that there was a loss of property values for the homeowners that would be more directly attributable to TVA. TVA's activities in this case, again, to get back to what Judge Rogers was saying, while we certainly argue that they're commercial and not governmental, aren't the real issue. Judge Varlin didn't even reach Thacker in ruling on the motion that we're here for today because he didn't find it necessary. So while it is only an important issue, if you look at the AB determination about determining whether TVA has immunity on the front end, because Jacobs wouldn't be entitled to immunity unless TVA is, if you consider in that order, we still think TVA has no immunity because the sue and be sued clause, as Thacker says, is supposed to be interpreted very broadly. This is, as the court in Thacker described, seems to be clear to us at least that it arises out of a commercial activity, the generation of electric power for sale to consumers. And the simple fact that they were designated as the onsite supervisor under CERBLA doesn't change the fact that they were, that the activity arose out of a commercial activity. Again, the question for us. Can I ask a question, Mr. Silvey? If it were a private utility company, could they have been the lead in a cleanup? No, no, they could not have, but they would have still been doing exactly the same kinds of activities remediating the spill, which is what happened in the Duke case, that TVA undertook here. I think your grave interference argument is stronger than your saying it's just a commercial activity and not a governmental kind of supervision. What about going to the other side, the Campbell-Ewald test? Did that change Yearsley's standard? Not at all. And I know you all have. If you read Campbell-Ewald, which the court did not have the advantage of when it last had this case, Campbell-Ewald reaffirmed Yearsley. It did nothing but a general, simple, typical Yearsley analysis to find that in that case, because the allegations showed both a deviation from the applicable law, as well as a failure to follow the government's instructions, that the Yearsley standard was met. And there was no new test in that. There are numerous decisions since then discussing it, and none of them implicate or expressly state that Campbell-Ewald created a new test. It did not. The district courts, the lower courts, the courts of appeals that have looked at these type of immunity requests never interpret Campbell-Ewald to have created a new test. And so you simply look at Yearsley, whether the government- Mr. Silvey, can I just ask you a specific question about the respirator point? Okay, so we're under Campbell-Ewald, Yearsley. And so one of the ones, as you know, is the respirator, right? Yes. As I understand it, the safety plan. So you tell me if I'm wrong, but I'm assuming that goes out of government directives. It says, workers may voluntarily use a respirator with the approval of their supervisor. I'm quoting, but such requests must be evaluated, quote, to determine if respirator use will not in itself create a hazard. Now my understanding is that they were, Jacobs was found liable for adhering to this directive on the ground that people without respirators got, you know, ran into trouble. So that you can understand how the respirator thing cuts both ways. You know, you might, it's hot in Eastern Tennessee, so you could see why you wouldn't just let anyone use it. So tell me why under Yearsley, Campbell-Ewald, that one isn't an example where they are caught between a rock and a hard place, the rock being the federal directive, the hard place being the tort liability. Because as again, as we alluded to in our brief, that doesn't help to say that. Well, again, with the respirator, there was evidence at trial say that we have the benefit of having a jury trial and the jury heard evidence that one of the employees, for example, requested a respirator based on a doctor's note, the doctor's prescription, Jacobs refused to allow him to use that respirator. So that would have necessarily been in violation of both the federal standard, which allows use of respirators with a prescription and the comments or the directives of the SWSHP, which allow use of respirators on a doctor's prescription. I think you're trying to answer this question with one example, which apparently helps you. Isn't it your burden to show that none of the plaintiffs could obtain relief that was inconsistent with the directive? You don't have to show one to help. You have to show all don't. I don't, I disagree with the court. I don't think that's what the standard is. I think that the jury instructions were very clear about what was necessary in the court's view to demonstrate that there were failures to follow the government's directives. Jacobs did not object to the jury instructions. And when the jury returned a verdict against it, that was the issue. That was conclusive on the issue. I'm not aware of any requirement or any CFR regulation that would require a universal refusal to follow. The jury was told Jacobs can't be liable. If all Jacobs was doing was following federal directives. The jury was told that if in one. Mr. Sylvie, please. You're, you're, you're trying my patience. Just answer that question. Was the jury instructed that way? I'm sorry. Well, again, I didn't understand. The jury told that Jacobs cannot be liable if it was following federal directives. I think the jury instructions said the opposite, that if the court, if the jury finds in these ways for one of these six points, then Jacobs would not be entitled to immunity because it had not followed the directives of the government. I think it was the converse of that. And again, that instruction was not objected to. So again, the, the status of where we're at here is that the, the pretense for bringing this latest motion was Thacker. Thacker doesn't really affect either under its express language or implied language. Jacobs. Entitlement to derivative immunity. That consideration is based on usually in camera you all, which the district court found had been waived because this motion was submitted only on the basis that Thacker provided a change in the law. We think it's clear that that is not the case. And if Thacker was as important as Jacobs implies it to be, the court should know that TBA has not sought to submit an amicus brief in this case. So how, so how, you know, I know this went to a separate panel. I'm mystified how that happened, but the seventh amendment issues, I realized you're not in front of us, but I assume that's still in the case, right? It would certainly be in the case on a direct appeal to the conclusion of the phase two trial. That's correct. Yes. And I'm right in thinking the phase two trial will go to a different jury. Yes. Wow. But you're, you are correct. You and I do agree that the seventh amendment issue is not properly before the court. Now I say I've only got 15 seconds left. If I can conclude unless the court has any other questions for me. We would just like to reiterate that any way that you address the issues that were actually brought in their motion or that are ostensibly brought in their motion, there is no set of circumstances under which Jacobs would be entitled to derivative immunity. They cannot meet the standard set forth in years late as expounded on in Campbell Ewald and certainly Thacker doesn't affect that evaluation in the least. If there are no other questions, I'll close. Thank you. Let me just make sure I'm judge Gilman question. I'm okay with Rogers. No, thank you. Okay. Thank you very much, Mr. Sylvie. We appreciate it. Ms. Evangelist, give you a rebuttal. Thank you, your honor. I'd like to begin with Thacker first. This absolutely would gravely interfere. Thacker is a very recent decision, so there's not a lot of case law on it, but it is very clear here that what TVA was doing is exercising its role as the lead federal agency and articulating standards of care and what plaintiffs would argue for here, what they're arguing for is that juries in seven districts, seven, excuse me, different states where TVA operates would be allowed to come up with conflicting standards on when a respirator is necessary. As your honor points out, that is a very complicated decision. Federal regulations govern the safety plan was consistent with those regulations and TVA followed it, but they're trying to, excuse me, Jacobs followed it. How exactly was the jury instructed on this particular point? Your honor, the jury instructions were completely erroneous and we need a new trial and a minimum. The court instructed the jury that, uh, I have ruled that defendant would be acting contrary to the will of the government and is not immune from suit. So they are contrary to the will of the government if it did any of these things. And so the district court followed that standard. It did not say if Jacobs did not follow TVA's directions. It didn't say that. Didn't you all argued on the respirator one that you were just respecting consistent with that instruction. Didn't you argue as a defense, we were just following the directive. Um, your honor, we, we did, but your honor, let me say here. Why wouldn't that be a jury question? Because the, the court allowed all of this testimony about what it did was go back to its summary judgment ruling and it baked in the standard that it articulated there about contrary to the will of the government. And it had already decided that failing to, to honor a prescription for a dust mask would violate the safety plan. Of course, that's not what the safety plan says, but the district court followed a contrary to the will standard. And it looked at deposition. So the, so your friend on the other side says you didn't object to this. We did your honor. We did object. Just give me, just give me the site. Give me the site. Yes. Uh, it's a docket entry for 22. The page is one four nine six four and one four nine six six. Um, I think those are the, the objections here and your honor, there's a huge seventh amendment problem because in addition to, I mean, you can, you can, you can use your time on that, but am I right? I don't, I don't know why that motion didn't go to our panel. Obviously the clerk's office botched that, but, um, but it didn't reach that. So I just was trying to confirm my suspicions. Yes. So here are the theories that, that, that were presented to the jury. Of course, they don't all satisfy Campbell evil. We don't think any of them do, but even if one doesn't, we have a problem because the instructions were in the disjunctive. We don't know which theory the jury adopted and the incorrect legal standard and the district court's incorrect understanding of what would deprive Jacobs of immunity baked into those instructions. So here we have second, I have a couple of questions and you don't have enough, a whole lot of time. I wonder if I could try to articulate them and if they don't make any sense, well then so be it. I understand Thacker, um, a derivative immunity, even if, but only if an agency was, um, in the context of us, a sue and be sued clause scheme rather than a federal tort claims act scheme. Correct. Preserve that possibility under Burr. Okay. What's your best case in which that immunity just like that in a sue and be sued case under Burr, such a immunity has been found to be commercial. Your honor, there isn't a lot of case law, so I don't have any more examples. All we really have is, is justice Kagan's list of the type of things that would be one as opposed to the type of things that would be the other. Is that correct? Yes, your honor. I want to just not even necessarily a holding that there is such derivative immunity. She's just preserving it. Your honor. There really has to be because otherwise you would have in the Boeing situation, the state of California articulating different standards for environmental nuclear cleanups that can't be allowed. That would gravely interfere. I don't know. You can have different standards for how fast you drive your trucks and that would be no problem. But here we have conflicting standards. So we have to look at the type of the suit. We're not arguing that TVA is always immune. In fact, a lot of the times it's not immune. It's not immune. If one of its workers is driving a truck negligently, it's not immune. If it intentionally discriminates on the basis of race in any event, there's no case law that supports your position. Well, your honor in, in that true, or what's your best case? I guess in Sacker, your honor, the court said eminent domain would be immune. So why not go? Why not? Burr is like the 1940s or something. What about burr cases? Yes. Burr is a great example. And we cite that. So I'm making the point. What's going on in her. I mean, it sounds different from this case. It sounds real different. Is that your best case for itself? Well, your honor, it's from the Supreme court and it does discuss grave interference and we have to look at. I'm talking about commercial. You've got commercial and grave interference. I'm just talking about commercial. I mean, maybe it doesn't persuade my colleagues, but it just doesn't look good. If you draw the distinction that justice Kagan drew in Thacker, it sure looks at two on a first glance anyway, to be on the commercial side of it, it's cleaning up the mess that you made as a contractor doing something that a contractor could do for a, for a private utility provider. Excuse me, your honor. It actually can. So Duke energy could never have stepped in as lead agency. That's I think the end of the. My question is what's your best case. Your best case is for I'll go look at her. Well, and Hendy versus Bellow is, is another case. I think we've stated. They found that it was not commercial. Well, I'm talking about grave interference. I'm talking about commercial. Oh, well, okay. Excuse me, your honor. I'm on commercial. I, I don't I don't have another case handy, but I will say that. The question I have another, and it's kind of a parallel kind of question about the Campbell evil. And I didn't express it very clearly, but let me try again. Campbell evil says, if you have a violation of the regulation and the violation of explicit requirement, then there's no derivative immunity. I'm not seeing how that implies the statement that if there's no explicit regulation, there is this derivative immunity. It doesn't seem logically to apply. So I'm wondering if you have any cases, any cases which say something like that, if you don't do any of the cases, do any cases, if they don't, we'll have to deal with it. I'm just wondering if there are, are there cases which say in the absence of an explicit requirement, there is derivative immunity when you contract with a sue and be sued. Well, your honor, the cases that we've cited from the fourth circuit, the DC circuit, and I took those cases to be of the former type rather than the latter. Well, I think this is of the former type. So I don't have another case, but you're arguing for the converse of what those cases hold is what I'm asking. Well, you have a case where you were the actual holding that you want. We can look at and compare it to rather than the, than the negative inference. Well, the holding that we want your honor is that the safety plan articulated explicit instructions and Jacobs, unless Jacobs violated those explicit instructions, it can't be held liable. And here we believe that it absolutely. Any cases saying that some entity can't be held liable, applying that standard. Yes. As opposed to saying that it would be held liable if it did. Right. That it can't be held liable. Are there any cases which say that they can't be held liable? Well, Cunningham, the contractor was not held liable. So that that's the one that I would point the court to here again, the. Misadventures. I'm wondering, you know, we've been talking about grave interference or is kind of separate from the commercial governmental dichotomy. Yes. Is it possible that we should think of them together that when you're asking yourself about grave interference, it's not grave interference as to commercial implications for someone like Jacobs it's grave interference with respect to something that's government like. So if you, if you take your case handy, I think that's a grave interference case from the fourth circuit, but it's a case where the postal worker was enjoying from going to work. That really, that really interferes with the government function, right? I mean, a government worker can't go, you know, sort the mail or whatever it is they were doing. Is it possible that we should try to think of them together or should we think of them as quite separate inquiries? Well, your honor Thacker looks at them separately. It says, first is this commercial or governmental. And again, this we believe is clearly governmental. And then it says, so because that's governmental, would this gravely interfere with the governmental function in here? We believe that it would, because again, imagine that this is, imagine Jacobs is not in the suit. We decide Jacobs immunity based on Campbell evil. Imagine this is just about TVA. If TVA says respirators are only required, are only allowed. If the following requirements are met consistent with OSHA regulations. And then the state of Tennessee says, no, we're going to hold TVA liable for not allowing Mr. Thompson to get a respirator. That was the example. I think my opponent used, he actually failed his test for a respirator. That's why he wasn't allowed to use one because it would have violated federal law. So if TVA can be held liable for not giving Mr. Thompson a respirator, then that would gravely interfere because it has determined in its exercise of its judgment as the lead agency that this. Well, you know, my answer to that is this really simple solution. Get rid of the suit and be suit clause. I mean, that all makes a lot of sense when we're talking immunity, but when you have a suit and be suit clause, and then we're talking about implied limits on it, you start to lose me a little. I don't think that it's actually that, that big of a, of a, of an area where TVA is immune. This is the core of its governmental function. So again, intentional race discrimination, negligent driving of a truck, maybe, you know, cleaning up a power line. That's something basic that Duke energy would do, but not as lead agency articulating 300 pages of a safety plan. It's like the department of energy in the Boeing case. That's what's happening. Let me see if judge Gilman has any more questions. No, I think I sort of understand what she's saying. I'm not sure I agree with it, but I understand. I have one last point. Okay. One second, judge Rogers. Do you have any more questions? No, thank you. All right. So I'll let you finish your last point, but last time I did this, it went to points two and three. So you're going to stick with the bargain one point with two or three sentences and pew dependent clauses. Thank you. Your honor. Last point is under Campbell Ewald. The contractor is immune. If it complied with federal directives, that's really the simplest formulation here. We had explicit directives and Jacobs complied with them. We don't know which theory the jury agreed with and the illegal erroneous, excuse me, standard was baked into the jury's instruction. So at a minimum, we need a new trial here. Thank you. All right. Thanks to both of you for your helpful briefs. It's a challenging case. And thank you very much for answering our questions. We really appreciate it.